IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| STACEY L. SIMINS,<br>PLAINTIFF,<br><br>v.<br><br>CREDIT CONTROL, LLC,<br>DEFENDANT. | CASE NO. 1:19-cv-01247-RP |

**DEFENDANT CREDIT CONTROL, LLC'S PARTIAL MOTION TO DISMISS
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

*TO THE HONORABLE UNITED STATES DISTRICT JUDGE ROBERT PITMAN:*

Defendant, Credit Control, LLC ("Credit Control") moves the Court to dismiss Plaintiff Stacey Simins's ("Plaintiff") §§ 1692e, 1692f, and 392.304 claims against Credit Control pursuant to Rule 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted.

**I.      INTRODUCTION**

This case arises, in part, from a letter sent by Credit Control to Plaintiff offering to settle a valid and owing debt owed to JPMorgan Chase Bank, N.A. Plaintiff has asserted claims against Credit Control under the Federal Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (the "FDCPA") and the Texas Debt Collection Act ("TDCA") under Tex. Fin. Code Ann. § 392 *et seq*., alleging that the letter was misleading and deceptive because Credit Control's letter did not disclose the IRS tax implications had Plaintiff accepted the settlement offer in the letter. Plaintiff does not state any authority for her claims, nor does she cite any part of the FDCPA or TDCA that requires a non-attorney debt collector to disclose to a debtor all of the potential tax implications, [and exclusions thereto], of accepting a settlement offer. Further, Plaintiff does not allege she took advantage of the settlement offer in the letter, does not allege that she intended to take advantage

of the settlement offer in the letter, nor does she allege that had she accepted the settlement offer she would have incurred any tax implications.

This exact plaintiff attorney driven theory has already been denied in another district within the State of Texas. Therefore, Plaintiff has failed to state a claim upon which relief can be granted and as a result, Plaintiff's claims should be dismissed.

## II.     FACTUAL BACKGROUND

On November 4, 2019, Credit Control mailed or caused to be mailed a collection letter to Plaintiff regarding a debt owed to JPMorgan Chase Bank, N.A. *See* Plaintiff's First Amended Complaint ¶ 18. In addition, a true and accurate copy of the November 4, 2019 letter is attached hereto as Exhibit A. The letter offered Plaintiff three options to settle the debt; one payment of $3,133.00, twelve monthly payments of $295.00, or twenty-four monthly payments of $160.00. *See* Plaintiff's First Amended Complaint ¶ 20 and Exhibit A. If accepted, the settlement would have resulted in debt forgiveness in the amount of $7,308.10, $6,901.10, or $6,601.10, respectively. *See* Plaintiff's First Amended Complaint ¶ 21 and Exhibit A. The letter does not inform the Plaintiff of the tax consequences of accepting the settlement offer. *See* Plaintiff's First Amended Complaint ¶ 22 and Exhibit A.

## III.    SUMMARY OF THE ARGUMENT

The letter sent by Credit Control was not false, misleading, or deceptive. The FDCPA does not require a debt collector to give the debtor legal advice or notice concern the potential tax consequences, [and exclusions thereto], of any settlement of the debt for less than the full balance. Therefore, Credit Control was not required to provide any notice to the Plaintiff that she might owe income taxes on the amount of the forgiven debt.

## IV.    ARGUMENT AND AUTHORITIES

A. **Motion to Dismiss Standard**

Under Fed. R. Civ. P. 12(b)(6), a complaint should not be dismissed "unless it appears certain that [plaintiff] can prove no set of facts that would support his claim and would entitle him to relief." *Smith v. Sydnor*, 184 F.3d 356, 361 (4th Cir. 1999). The Court must accept all of the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Id.* at 361. However, that requirement applies only to facts, not to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In addition, "if the well-pled facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]'- that the pleader is entitled to relief." *Id.* at 1950. Particularly where potentially costly discovery is concerned, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Accordingly, the Supreme Court has held that to satisfy the pleading requirements of Fed. R. Civ. P. 8(a), a complaint must include a plausible statement of the claim showing that the pleader is entitled to relief and providing the defendant with fair notice of "what . . . the claim is and the ground upon which it rests." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 557. Rather, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (emphasis added).

B. **FDCPA Standard.**

The FDCPA was enacted:

> to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(k). The FDCPA bars debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," *id*. § 1692e, including "the threat to take any action that cannot legally be taken," *id*. § 1692e(5), and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *id*. § 1692e(10). The FDCPA also prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt," *id*. § 1692f.

When assessing whether particular conduct violates the FDCPA, courts use the "least sophisticated-consumer" standard, an objective standard. *Harvey*, 453 F.3d at 329, 331. This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) (quotation marks and citations omitted). The standard "also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id*. at 438-39 (quotation marks and citations omitted).  Courts may properly make the objective determination whether language effectively conveys a notice of rights to the least sophisticated debtor. *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 508 n.2 (6th Cir. 2007) (quoting *Savage v. Hatcher*, 109 F. App'x 759, 762 (6th Cir. 2004)).

The FDCPA serves to ". . . ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged . . . ." 15 U.S.C. 1692(e). This dual-purpose combats "the proclivity of some lawyers to seize on nonmaterial minutiae in an effort to

grasp the brass ring of attorneys' fees that are awardable to successful plaintiffs under the [FDCPA]." *Wahl v. Midland Credit Mgmt.*, 556 F.3d 643, 645-646 (7th Cir. 2009); s*ee also, Rodriguez v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 2009 U.S. Dist. LEXIS 23044, *10 (N.D. Ill. March 10, 2009).

Over ten years ago, a Judge sitting in the Eastern District of New York made the following observation:

> Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the individual who has been threatened or misled. The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation . . . nor to ferret out collection abuse in the form of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." *Id*. Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs. . .
>
> It is interesting to contemplate the genesis of these suits. The hypothetical Mr. Least Sophisticated Consumer ("LSC") makes a $400 purchase. His debt remains unpaid and undisputed. He eventually receives a collection letter requesting payment of the debt which he rightfully owes. Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims "This clearly runs afoul of the FDCPA!" and — rather than simply pay what he owes — repairs to his lawyer's office to vindicate a perceived "wrong." "[T]here comes a point where this Court should not be ignorant as judges of what we know as men."

*Jacobson v. Healthcare Fin. Servs.*, 434 F. Supp. 2d 133, 138-39 (E.D.N.Y. 2006) (citations omitted). While the *Jacobson* decision was partially reversed on appeal, Judge Glasser's frustration has been echoed by numerous courts across the country including the Sixth Circuit Court of appeals. *See Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F. 3d 504, 513-14 (6th Cir. 2007). A few years ago, Judge Glasser had the opportunity to revisit his observation from *Jacobson* when authoring an opinion on another case involving an extremely sophisticated

consumer in *Majerowitz v. Stephen Einstein & Assocs., P.C.*, No. 12 Civ. 4592(ILG)(RLM), 2013 WL 4432240, at *6-8 (E.D.N.Y. Aug. 15, 2013). There, Judge Glasser found that the action was "brought in bad faith" given "that this plaintiff is not 'the least sophisticated consumer.'" *Id*. at 8.

This case involves the hypothetical least sophisticated consumer who was not deceived or was not misled by the letter she received from Credit Control. Indeed, she was not affected by the letter at all and only alleges some hypothetical damage so that she could become the plaintiff in a class action lawsuit. This case is also nothing more than an attempt to "seize on nonmaterial minutiae in an effort to grasp the brass ring of attorneys' fees that are awardable to successful plaintiffs under the FDCPA." As supported herein, Plaintiff's First Amended Complaint must be dismissed with prejudice.

Plaintiff alleges Credit Control's letter was misleading and deceptive because Credit Control's letter failed to disclose the IRS tax implications had Plaintiff accepted the settlement offer in the letter. Plaintiff does not state any authority for her claims, nor does she cite any part of the FDCPA or TDCA that requires a non-attorney debt collector to disclose to a debtor all of the potential tax implications, and exclusions thereto, of accepting a settlement offer. Nevertheless, Plaintiff alleges that by sending the letter, Credit Control violated Section 1692e and 1692e(10) of the FDCPA by using false, deceptive, or misleading representations or means in collection of a debt and 1692f of the FDCPA by using unfair or unconscionable means to collect or attempt to collect the debt.

C. **TDCA Standard.**

The Texas Debt Collection Act, among other things, prohibits a debt collector from:

> "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."

*See* Texas Fin. Code § 392.304(19).

Unlike the FDCPA, the Texas Act requires a plaintiff to plead that he suffered an actual, foreseeable injury as a result of the defendant's wrongful acts. *See* TEX. FIN. CODE § 392.403(a)(2); *see also Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 31 (Tex. App.—Tyler 2000, pet. denied) ("Because [the plaintiff] did not prove that any actual damages were caused by [the defendant's] debt collection practices, she did not successfully maintain an action under the Act."); *Lopez-Garcia v. Deutsche Bank Nat'l Trust Co. for Argent Sec. Inc.*, No. 16-cv-00217, 2017 WL 2869430, at *4 (W.D. Tex. July 5, 2017) (granting summary judgment on the plaintiff's TDCA claim because "plaintiff ... has presented no evidence of the actual damages upon which recovery under the TDCA must be based"); *Naranjo v. Universal Sur. of Am.*, 679 F.Supp.2d 787, 801 (S.D. Tex. 2010) ("Texas courts have stated that a plaintiff who cannot prove actual damages cannot 'successfully maintain an action under the [Texas Debt Collection] Act.'" (quoting *Jackson Law Office, P.C.*, 37 S.W.3d at 30-31)).

### D.  **Credit Control's Settlement Offer Was Not Deceptive or Misleading**.

Plaintiff's claims under §§ 1692e, 1692f, and 392.304 in her First Amended Complaint boils down to one fact, Credit Control did not disclose the potential tax implications had Plaintiff accepted one of the settlement offers which would have resolved her debt for $6,601.10 to $7,308.10 less than what she owed on the account.  Plaintiff does not allege she accepted the offer, or intended to accept the offer, or even that she would have had actual tax implications had she accepted the offer.  Nonetheless, Plaintiff contends Credit Control's omission of legal advice regarding the potential IRS tax consequences, [and assuming all of the exclusions thereto], was an attempt to deceptively obfuscate the negative effects to Plaintiff of accepting the settlement offer. *See* Plaintiff's First Amended Complaint ¶ 23.  Nothing can be further from the truth.

There is nothing misleading or deceptive about the settlement offer contained in Credit Control's letter to Plaintiff. If the offer was accepted, the payment of the settlement amount would have "resolved" Plaintiff's account. *See* Exhibit A. Thus, upon payment of the settlement amount offer within Credit Control's letter, the account would be resolved, and Plaintiff would owe nothing further on the underlying account. Whether or not Plaintiff would potentially owe taxes on any debt forgiven as a result of accepting the settlement offer of ~60-70% less than the full amount owed is a matter for Plaintiff's accountant or tax attorney to determine and is between Plaintiff and the IRS. Nothing in the FDCPA requires Credit Control to give legal advice to Plaintiff concerning the tax consequences of any settlement of the account.

Courts across the country have already addressed the exact claim alleged by the Plaintiff in this instant matter, including a court in the Southern District of Texas. "Courts confronted with this argument have uniformly held that non-lawyer debt collectors have no obligation under the FDCPA to disclose in dunning letters possible tax consequences of debt forgiveness." *Daugherty v. Convergent Outsourcing, Inc.*, No. CIV.A. H-14-3306, 2015 WL 3823654, at *7 (S.D. Tex. June 18, 2015) (reversed on other grounds). The Second Circuit held that a similar letter offering settlement of the debtor's account for a lump-sum payment equal to a "savings of 48% on your outstanding account balance" did not violate the FDCPA for omitting advice on the possible tax consequences of the forgiven portion of the debt. *See Altman v. J.C. Christensen & Associates, Inc.*, No. 14–2240–CV, 2015 WL 2242398, at *1 (2d Cir. May 14, 2015) ("We ... hold that a debt collector need not warn of possible tax consequences when making a settlement offer for less than the full amount owed to comply with FDCPA."). *See also Rigerman v. Forster & Garbus LLP*, No. 14–CV–1805 MKB, 2015 WL 1223760, at *4 (E.D.N.Y. Mar.16, 2015) ("There is no language in the FDCPA that requires a debt collector to notify a debtor of the potential tax

consequences of any debt forgiveness.") (finding dunning letter not misleading); *Schaefer v. ARM Receivable Mgmt., Inc.*, No. CIV.A. 09–11666–DJC, 2011 WL 2847768, at *5 (D.Mass. July 19, 2011) ("The language of the FDCPA does not require a debt collector to make any affirmative disclosures of potential tax consequences when collecting a debt.... [R]equiring, as a matter of law, debt collectors to inform a debtor of such a potential collateral consequence of settling a pre-existing debt seems far afield from even the broad mandate of FDCPA to protect debtors from abusive debt collection practices."); *Landes v. Cavalry Portfolio Servs., LLC*, 774 F.Supp.2d 800, 802–03 (E.D.Va.2011) ("Boiled down to its essence, the Complaint essentially amounts to a claim that [defendant] violated the FDCPA by failing to advise [plaintiff] and other consumers of the tax consequences of accepting a discount of their debt. However, there is no language anywhere in the FDCPA that mandates such affirmative disclosures by a debt collector.").

In *Landes*, the defendant debt collector sent the plaintiff a letter offering options to settle the plaintiff's purported debt on terms providing a 10 or 20 percent discount on the amount owed. *Id*. at 801. The letter, sent during tax season, stated that "[defendant] wants you to get the most out of your tax refund this year" and that "[defendant] wants you to get tax season savings!," presumably with the intent that the plaintiff debtor could use her tax refund to settle her debt. *Id*. Under those facts, the *Landes* court rejected the plaintiff's argument that the debt collector's failure to affirmatively disclose the income tax consequences of the settlement offers was misleading. The court concluded: "[A] careful reading of the letter reveals that the only promise being made by [defendant] was to reduce the amount of indebtedness by a specified percentage if the debtor paid in full or on a specified payment schedule. Nowhere did [defendant] promise that the discharge of indebtedness would or would not have potential tax consequences, and under the circumstances, no reasonable debtor could construe the language to suggest otherwise." *Id*. at 804.

### E. **Plaintiff's § 1692f Claim Is Based On The Same Allegations As Her Claim Under § 1692e, Thus It Is Due To Be Dismissed As A Matter Of Law.**

In her Fist Amended Complaint, Plaintiff alleges all of the same conduct from her 1692e claims and then conclusively states that Credit Control's offer without warning of the tax consequences violated 15 U.S.C. § 1692f. Section 1692f prohibits a debt collector from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. 1692f. It functions as a "backstop" the catch any violations that might slip through the cracks or otherwise not fit into § 1692d or § 1692e. *Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 878 (S.D. Tex. 2011); *see Fath v. BAC Home Loans*, No. 3:12-CV-1755-O, 2013 WL 3203092, at *13 (N.D. Tex. June 25, 2013).

Plaintiff's 1692f claims fail for the same reasons as described above. However, additionally, there is a "growing consensus, at least among district courts, that a claim under section 1692f must be based on conduct either within the listed provisions or be based on conduct which falls outside of those provisions, but which does not violate another provision of the FDCPA." *Id*. (citing *Winberry v. United Collection Bureau, Inc.*, 697 F.Supp.2d 1279, 1292 (M.D. Ala. 2010)). *See*, e.g., *Amina v. WMC Mortg. Corp.*, No. 10–00165 JMS/KSC, 2011 WL 1869835, at *16 (D. Haw. May 16, 2011); *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D. N.Y. 2006); *Chalik v. Westport Recovery Corp.*, 677 F. Supp. 2d 1322, 1330 (S.D. Fla. 2009); *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996); *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1461 n. 10 (C.D. Cal. 1991).

Here, Plaintiff's section 1692f claim must fail because it is based on conduct which is 1) not one of the listed provisions of section 1692f, and 2) because the 1692f claim is based on conduct which violates another provision of the FDCPA—namely 1692e. Therefore, because

Plaintiff relies on the same allegations to support a claim under § 1692e, without alleging any additional conduct that could be deemed an "unfair or unconscionable means to collect or attempt to collect any debt," her purported claims under § 1692f fail as a matter of law. *Id*.

### F. Plaintiff's TDCA § 392.304 Claim Fails As A Matter Of Law.

Plaintiff's TDCA claims must fail for two reasons. First, Plaintiff's claims under the TDCA fail for the same reasons they fail under the FDCPA. Second, Plaintiff has failed to provide any factual allegations supporting that she suffered actual damages. Each of these will be dealt with separately below.

"The TDCA is modeled on the FDCPA." *Brandon v. Wells Fargo Bank, N.A.*, No. 4:11-CV-261, 2011 WL 6338832, at *11 n.3 (E.D. Tex. Nov. 30, 2011). In short, "[t]he conduct prohibited under the TDCA is coextensive with that prohibited under the FDCPA, at least insofar as the same actions that are unlawful under the FDCPA are also unlawful under the TDCA." *Gomez v. Niemann & Heyer, LLP*, No. 1:16-CV-119 RP, 2016 WL 3562148, at *6 (W.D. Tex. June 24, 2016) (internal quotation marks and citation omitted) (collecting cases).

"Because the FDCPA and TDCA are isomorphic (that is, they share the same general structure but are identified by different names), the same analysis, this Court applied to assess the sufficiency of the FDCPA claim will be utilized to determine the adequacy of the TDCA claim." *Fiddick v. Bay Area Credit Serv.*, LLC, CIVIL ACTION NO. 3:18-CV-00416 (S.D. Tex. Apr. 25, 2019) (citing *Hsu v. Enhanced Recovery Co., LLC*, 1:17-CV-128-RP, 2018 WL 315758, at *6 (W.D. Tex. Jan. 5, 2018) ("[B]ecause the language from each provision [of the TDCA] closely mirrors the language from the corresponding provisions in the FDCPA, the Court will interpret the TDCA provisions at issue here in the same fashion as it interprets their federal counterparts.") (citation omitted); *Langley v. Weinstein & Riley, P.S.*, No. H-12-1562, 2013 WL 2951057, at *9

(S.D. Tex. June 14, 2013) (observing that "the FDCPA and the TDCA are very similar," and applying the same analysis to both causes of action) (collecting cases); *Bullock v. Abbott & Ross Credit Servs., LLC*, No. A-09-CV-413 LY, 209 WL 4598330, at *2 n.3 (W.D. Tex. Dec. 3, 2009) ("The same actions that are unlawful under the FDCPA are also unlawful under the TDCA.") (citation omitted).  As such, Plaintiff's TDCA claims should be dismissed for the same reasons that her FDCPA claims should be dismissed.

V.      CONCLUSION

There is no requirement in the FDCPA or TDCA that a debt collection letter inform a debtor of the potential tax implications of a settlement offer.  The FDCPA and TDCA do not require a debt collector to give tax advice about the consequences of accepting an offer to settle the debt for less than the full amount due.  Plaintiff seeks to impose additional requirements upon debt collectors under the FDCPA and TDCA.  The letter was not misleading or deceptive, or in any way in violation of the FDCPA and TDCA. Plaintiff has failed to state any claim on which relief can be granted.  Therefore, Credit Control, LLC respectfully requests that this Court dismiss Plaintiff's §§ 1692e, 1692f, and 392.304 claims in their entirety and award Credit Control, LLC reasonable fees and costs associated with its defense of this matter, as well as any other relief this Court deems just and proper.

| | |
|---|---|
| Dated:  February 5, 2020. | Respectfully Submitted,<br><br>**MALONE FROST MARTIN PLLC**<br><br>*/s/ Robbie Malone*<br>ROBBIE MALONE<br>State Bar No. 12876450<br>Email: rmalone@mamlaw.com<br>EUGENE XERXES MARTIN, IV<br>State Bar No. 24078928<br>Email: xmartin@mamlaw.com<br>COOPER M. WALKER<br>State Bar No. 24098567<br>Email: cwalker@mamlaw.com<br>NorthPark Central, Suite 1850<br>8750 North Central Expressway<br>Dallas, Texas 75231<br>T: 214-346-2630 \| F: 214-346-2631<br><br>**ATTORNEYS FOR DEFENDANT**<br>**CREDIT CONTROL, LLC** |

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Defendant Credit Control, LLC's Motion to Dismiss and Memorandum of Law has been served upon all counsel of record by electronic delivery through ECF and email on this the 5th day of February, 2020.

*/s/ Cooper Walker*
COOPER M. WALKER
