**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **STACEY L. SIMINS** | § | |
| | § | |
| **v.** | § | **1:19-cv-1247-RP** |
| | § | |
| **CREDIT CONTROL, LLC** | § | |

<u>**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**</u>

TO:   THE HONORABLE ROBERT PITMAN
       UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Credit Control, LLC's Partial Motion to Dismiss (Dkt. No. 8); Plaintiff's Response (Dkt. No. 14); and Defendant's Reply (Dkt. No. 16). The District Court referred the above motion to the undersigned for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

**I. BACKGROUND**

Plaintiff Stacey Simins alleges various cause of action pursuant to the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.*, and its state counterpart, the Texas Debt Collection Act, TEX. FIN. CODE ANN. § 392, *et seq*. In her Second Amended Complaint, Simins alleges that Defendants Credit Control, LLC violated these statutes in two ways: (1) by making harassing phones calls; and (2) by sending a letter offering to settle her debt with JP Morgan Chase Bank, N.A. In its motion, Credit Control requests that the Court dismiss only the claims related to the "dunning" letter for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6).

On November 4, 2019, Credit Control mailed the following a letter to Simins regarding her debt:

| | **Credit Control, LLC** | |
|---|---|---|
| Letter Date | 5757 Phantom Drive, Suite 330 | Hours of Operation (CT): |
| 11/04/2019 | Hazelwood, MO  63042 | M - TH 8a.m. - 7p.m. |
| | 866-673-2642 | F 8a.m. - 5p.m. |

| Your Account Information | |
|---|---|
| Current Creditor: JPMorgan Chase Bank, N.A. | Our Acct.#:              80031900 |
| Original Creditor: JPMorgan Chase Bank, N.A. | Chase Acct.#:    *************7988 |
| | Amount Due:          $10,441.10 |

**Savings Options**

Dear STACEY SIMINS, please be advised, our client, JPMorgan Chase Bank, N.A., has placed the above referenced account with our office for collection. We have developed the following option(s) for you to resolve your account for less than the total Amount Due.

1. Resolve your account in 1 payment of $3,133.00. You save $7,308.10!
2. Resolve your account in 12 consecutive monthly payments of $295.00. You save $6,901.10!
3. Resolve your account in 24 consecutive monthly payments of $160.00. You save $6,601.10!

Upon completion of one of the options above, your account will be considered resolved. This offer will remain open until at least 20 days after you receive this notice. We are not obligated to renew this offer.

**Please Contact Us**

- Make a payment via our website at www.credit-control.com.
- Submit payment via U.S. mail to: PO Box 189, HAZELWOOD  MO  63042.
  Please include your account number in the memo section of your check or money order.
- Call us toll-free at 866-673-2642 to make payment arrangements. Calls are recorded and may be monitored for quality assurance purposes. You may ask for Jerry Stiegemeier.

**Disclosures**

This communication from a debt collector is an attempt to collect a debt. Any information obtained will be used for that purpose.

Dkt. No. 12-1.

Simins asserts that the representations in the letter that she would save specific amounts of money if she "resolved" her account violated the FDCPA and TDCA. She argues the representations are false, deceptive, and misleading because Credit Control knew at the time it sent the letter that there might be tax consequences to Simins if she settled her debt. Specifically, Simins alleges that Credit Control knew that more than $600 in debt would be forgiven, requiring a 1099-C form to be submitted to the Internal Revenue Service. Therefore, if Simins accepted any of the settlement offers, it was certain that she would be required to report the forgiven debt as income, which in turn would potentially result in her having to pay income tax on that sum. *See* 26 C.F.R. § 1.6050P-1(a) & (d)(2)-(3); 26 U.S.C. § 6050P. Simins asserts that despite knowing this, Credit Control affirmatively represents in the letter that she "will save" specific amounts of money, when in fact because she might owe taxes on the portion of the debt forgiven, which would offset some or all of the "savings,"

thus making the statements deceptive and misleading. Dkt. No. 12 at ¶ 39. Additionally, Simins asserts that Credit Control violated the relevant statutes because it "acted unfairly when it designed its November 4th collection letter to conceal the tax consequences of accepting its settlement offers." Dkt. No. 12 at ¶ 42. Credit Control responds that neither the FDCPA nor TDCA require a non-attorney debt collector to disclose all the potential tax implications to a debtor in a settlement letter, and thus Simins has failed to state a claim.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P.12(b)(6). In reviewing a Rule 12(b)(6) motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must "nudge their claims across the line from conceivable to plausible" by pleading "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 1937 (2009). Determining whether a complaint states a plausible claim for relief survives a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

## III. ANALYSIS

### A.   Federal Fair Debt Collection Act Claims

Congress enacted the Fair Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA prohibits the

use of "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Pursuant to 15 U.S.C. §1692(f), the FDCPA also prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."15 U.S.C. § 1692(f).

Because Congress "intended the FDCPA to have a broad remedial scope," the FDCPA should "be construed broadly and in favor of the consumer." *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016). Courts evaluate whether a collection letter violates the FDCPA by "view[ing] the letter from the perspective of an 'unsophisticated or least sophisticated consumer.'" *Id.* "At the same time we do not consider the debtor as tied to the very last rung on the intelligence or sophistication ladder." *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004). While this unsophisticated consumer "may be uninformed, naïve, and trusting, . . . [he is assumed to have] rudimentary knowledge about the financial world and [to be] capable of making basic logical deductions and inferences."*Id.*; *see also Salinas v. R.A. Rogers, Inc.*, No. 19-50618, 2020 WL 1181517, at *2 (5th Cir. Mar. 12, 2020).

### 1.     Claims that Letter was Deceptive or Misleading

Credit Control first argues that, on its face, the settlement offers contained in the letter do not qualify as "misleading" or "deceptive" under the statute. Credit Control points out that if Simins accepted the letter's offer, the payment of the settlement amount would have "resolved" Simins' account as represented, and she would owe nothing further on her account. Dkt. No. 12-1. It contends that "whether or not Plaintiff would potentially owe taxes on any debt forgiven as a result of accepting the settlement offer of ~60-70% less than the full amount owed is a matter for Plaintiff's accountant or tax attorney to determine and is between Plaintiff and the IRS." Dkt. No. 12 at 8.

Credit Control relies on various cases holding that the FDCPA does not require it to give legal advice to Simins concerning the tax consequences of resolving her debt. *See Daugherty v.*

4

*Convergent Outsourcing, Inc.*, 2015 WL 3823654, at *7 (S.D. Tex. June 18, 2015) (reversed on other grounds) (courts have uniformly hold that non-lawyer debt collectors have no obligation under the FDCPA to disclose in dunning letters possible tax consequences of debt forgiveness); *Altman v. J.C. Christensen & Associates, Inc.*, 2015 WL 2242398, at *1 (2d Cir. May 14, 2015) (letter offering settlement of debt for lump-sum payment equal to a "savings of 48% on your outstanding account balance" did not violate the FDCPA for omitting advice on possible tax consequences); *Rigerman v. Forster & Garbus LLP*, 2015 WL 1223760, at *4 (E.D. N.Y. Mar. 16, 2015) ("There is no language in the FDCPA that requires a debt collector to notify a debtor of the potential tax consequences of any debt forgiveness."); *Schaefer v. ARM Receivable Mgmt., Inc.*, 2011 WL 2847768, at *5 (D .Mass. July 19, 2011) ("The language of the FDCPA does not require a debt collector to make any affirmative disclosures of potential tax consequences when collecting a debt."); *Landes v. Cavalry Portfolio Servs., LLC*, 774 F. Supp. 2d 800, 802–03 (E.D. Va. 2011) ("there is no language anywhere in the FDCPA that mandates" advising debtor of tax consequences of settlement offering debt reduction).

Simins responds that her claims do not stem from Credit Control's failure to provide tax advice in conjunction with the settlement offer letter, but instead "from the misleading nature of Defendant's affirmative and explicit representations as to the amount Plaintiff *would* be saving in the event she accepted one of the offered settlements." Dkt. No. 14 at 2. Simins asserts that whether a particular collection letter violates the FDCPA is a fact question, and dismissal is only appropriate "when it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it." Dkt. No. 14 at 5 (citing *Daugherty,* 2015 WL 3823654, at *7). She argues that the letter in issue plausibly violates the statute because it uses affirmative language when any overall savings would be conditional on the tax consequences. Simins relies upon *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215 (N.D. N.Y. 2010), in support. She also cites to *Heredia v.*

5

Case 1:19-cv-01247-RP   Document 22   Filed 04/29/20   Page 6 of 11

*Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 815-16 (7th Cir. 2019) (which she acknowledges is not factually on point), and *Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762 (7th Cir. 2018), which is discussed in *Heredia*. Lastly, on this point, Simins argues that the cases cited by Credit Control, particularly *Altman* and *Landes*, are distinguishable from the instant case.

      The Court disagrees. Though she tries to distinguish the letter here as containing affirmative language, that characterization s not borne out when the relevant case law is examined. The law is clear that a creditor is not required to advise a debtor of potential tax consequences of a settlement, including in the circumstances at issue here. First, the *Dunbar* decision does not support Simins' position at all. In *Dunbar*, the plaintiff complained that a letter offering to settle a debt of $4,049.08 for $2,631.90, violated the FDCPA because the letter stated, "NOTICE: This settlement may have tax consequences." *Dunbar v. Kohn Law Firm SC*, 2017 WL 1906748, at *1 (E.D. Wis. May 8, 2017), aff'd sub nom. *Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762 (7th Cir. 2018). Dunbar alleged that "referring to tax consequences in a collection letter is intimidating and misleading suggesting to the unsophisticated consumer that failure to pay the debt will give rise to problems with the Internal Revenue Service." 2017 WL 1906748 at *1. Taking the polar opposite position as Simins takes here, Dunbar argued that "no law or regulation requires Defendants to say anything in a collection letter about the tax consequences of a settlement. . . . There is no legitimate reason for referring to 'tax consequences' in a collection letter." *Id.* at *5. The court disagreed and held that a statement that "this settlement may have tax consequences" does not violate the FDCPA, stating that it "agrees with those courts that have found that no such statement is required when proposing to settle a debt, but nonetheless finds that a debt collector who chooses to include such a statement has not violated the FDCPA." *Id.*, at *6. The Seventh Circuit affirmed, holding "the § 1692e claims were properly dismissed on the pleadings. The tax consequences warning is literally true and not misleading under the objective 'unsophisticated consumer' test." *Dunbar*, 896 F.3d at 768. Thus,

while *Dunbar* holds that advising a debtor of tax consequences of a settlement is not a violation of the FDCPA, the case says nothing about whether a failure to provide such advice would violate the statute.

*Heredia*, the other Seventh Circuit case Simins cites, is also not persuasive. In that case, noting it is impermissible for a creditor to make a "may" statement about something that is illegal or impossible, the court found the creditor's statement that it "may file a Form 1099C," when it never would because the principal forgiven was less than $600, potentially violated the FDCPA. *Heredia,* 942 F.3d at 814. The court's reasoning was based upon the fact that:

> information about filing a 1099C form, on the other hand, is information within the knowledge of the creditor. This makes the 1099C Clause materially different than the tax consequences clause at issue in *Dunbar*. Only the debtor knows whether, given her financial situation as a whole, she will have to pay taxes on the forgiven debt. The creditor, however, knows whether it will have to file a 1099C form or not.

*Id.* at 815-816. Here, Credit Control was silent about whether it intended to file a Form 1099C, so the case is not on point. In sum, neither case stands for the proposition that the FDCPA obligates a creditor to notify a debtor that settlement of their claims may have tax implications. Indeed, these cases highlight the fact that statements by debt collectors about taxes are fraught.

The only case Simins relies upon that is on point is *Ellis v. Cohen & Slamowitz, LLP*, where the court allowed a claim similar to the claim made here to survive a motion to dismiss. There, the plaintiff argued that a letter from a debt collector "offering to discount or forgive $1,924.91, or 30% of the debt," violated the FDCPA because it failed to notify him of the possible tax consequences. *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp.2d 215, 219-20  (N.D. N.Y. 2010). In reaching its conclusion, the district court found that:

> As outlined in Ellis's submissions, the amount of debt being forgiven may be taxable under 26 U.S.C. § 61(a)(12), whereby the taxes levied specific to that additional taxable income would in essence diminish the actual net value of the discount offered

> by the debt collector. Thus, the discount offered in [the debt collector's] second letter may constitute a deceptive or misleading collection practice by failing to warn the consumer that the amount forgiven could affect his tax status. Accordingly, [debt collector's] motion to dismiss Ellis's first cause of action is denied at this juncture.

*Id.* at 220 (internal citations omitted).  *Ellis*, however, has been abrogated by the Second Circuit. *See  Altman v. J.C. Christensen & Assoc., Inc.*, 786 F.3d 191, 194 (2d Cir. 2015).  The complaint in that case alleged that language asserting plaintiff would receive "a savings of __% on your outstanding account balance" was deceptive because the forgiven portion of debt might be taxable. The court rejected that claim, holding

> the Letter at issue here plainly states that the percentage saved is 'on your outstanding account balance.' The fact that a debtor may then have to pay tax on the amount saved is simply not deceptive in the context of what the savings are on a debtor's 'outstanding account balance.'

*Id. Ellis* is thus no longer good law in the Second Circuit, and has no precedential value here.

Finally, in *Landes v. Cavalry Portfolio Servs., LLC,* the plaintiff complained about a letter offering to reduce a debt if a specified amount was paid, that also included statements that the collector "wants [plaintiff] to get the most out of your tax refund this year" and "to get tax season savings," without also advising the plaintiff of the tax consequences the debt reduction.  The court concluded the letter did not violate the FDCPA because "a careful reading . . . reveals that the only promise being made by [the debt collector] was to reduce the amount of indebtedness by a specified percentage if the debtor paid in full or on a specified payment schedule." *Landes v. Cavalry Portfolio Servs., LLC*,  774 F. Supp.2d 800, 801, 804 (E.D. Va. 2011).

The letter at issue here, copied earlier, similarly refers to "your account" and "option(s) for you to resolve your account for less than the total Amount Due."  Thus, it refers to savings related *to the account* and says nothing suggesting anything more than that. Dkt. No. 12-1. Simins' attempts

to distinguish *Altman* and *Landes* are unpersuasive. Moreover, in a recent Fifth Circuit case dealing with 15 U.S.C. § 1692e, the court found that "language merely expressing a truism" was not false, deceptive or misleading. *Salinas v. R.A. Rogers, Inc.*, 952 F.3d 680, 681 (5th Cir. 2020). In that case the challenged statement was: "In the event there is interest or other charges accruing on your account, the amount due may be greater than the amount shown above after the date of this notice." *Id.* Salinas alleged the letter violated the statute because under no set of circumstances would his debt have increased due to interest or other charges while being collected upon. The Court found this claim to be 'downright frivolous.'" *Id.* at 683 (*citing Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 575 (7th Cir. 2004)). The Court also found the language in the letter was not misleading because, read logically, it merely stated that the amount due may increase "in the event" that other charges were accruing. The Court noted that Salinas' logic could lead to absurd results, "forcing collection agencies to sift through applicable statutes and loan contracts to determine with absolute certainty, for each and every account, whether interest or other charges might possibly accrue, insofar as some debt collectors have been exposed to FDCPA liability for omitting statements similar to the one at issue here." *Id.*, at 685.

      The settlement offers contained in the letter to Simins do not qualify as "misleading" or "deceptive" under the statute. "It is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it." *Daugherty*, 2015 WL 3823654, at *7. Similar to *Salinas*, the letter stated a mere truism—if Simins accepted the letter's offer, the payment of the settlement amount would have "resolved" Simins' "account" and she literally would have "saved" the amounts listed from the amount she owed on the debt. Dkt. No. 12-1. In this case, even an unsophisticated consumer would realize that there might be tax or other consequences if she

9

accepted the offer. There might also *not* be tax consequences, for instance if the debtor is insolvent, *Dunbar*, 2017 WL 1906748, at *1, but that would be something only the consumer would be aware of.  Simins has failed to state a claim that the letter was deceptive or misleading.

### 2. Claims that the Letter was Unfair or Unconscionable

Simins also alleges that the same conduct supporting her § 1692(e) claims also supports her § 1692(f) claim, which contends the letter was a use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. 1692(f). Because it is based on the identical language already addressed, for the same reasons just stated, Simins fails to state a claim under § 1692(f) as well.

### B. Texas Debt Collection Act Claims

The Texas Debt Collection Act prohibits a debt collector from, "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *See* TEXAS FIN. CODE § 392.304(19). "The conduct prohibited under the TDCA is coextensive with that prohibited under the FDCPA, at least insofar as the same actions that are unlawful under the FDCPA are also unlawful under the TDCA." *Gomez v. Niemann & Heyer, LLP*, No. 1:16-CV-119-RP, 2016 WL 3562148, at *6 (W.D. Tex. June 24, 2016) (collecting cases). The Court applies the same analysis to Simins' TDCA claims as to her FDCPA claims. *Hsu v. Enhanced Recovery Co., LLC*, No. 1:17-CV-128-RP, 2018 WL 315758, at *6 (W.D. Tex. Jan 5, 2018). Accordingly Simins' claims pursuant to the TDCA should be dismissed for the same reasons as her FDCPA claims.

### IV.  RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant Credit Control, LLC's Partial Motion to Dismiss (Dkt. No. 8) and

**DISMISS WITH PREJUDICE** all of the claims in the Second Amended Complaint based on the letter dated November 4, 2019, send by Credit Control to Simins.[1]

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 29th day of April, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

---

[1] Although "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case," *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir.2002), dismissal without leave to amend is appropriate if a court finds the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).